# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| PAUL CARILLO,  | CASE NO. 08cv2165-LAB (POR) |
|---|---|
| Petitioner, | **ORDER GRANTING REQUEST FOR CERTIFICATE OF APPEALABILITY** |
| vs. | |
| MATTHEW CATE, | |
| Respondent. | |

On August 17, 2009, the Court issued an order denying Petitioner's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Without reaching the merits, the Court granted Respondent's motion to dismiss the Petition as untimely. Petitioner then filed a notice of appeal and request for certificate of appealability ("COA").

Petitioner argues that *Slack* holds that when, as here, a petition is dismissed on procedural grounds without reaching the merits, a COA should issue if reasonable jurists could find the procedural ruling debatable. (Motion for COA at 3:9–11.) This may explain why Petitioner did not brief the merits, and focused solely on procedural issues. He has misread the holding of *Slack*, however. There, the Supreme court said:

> We hold as follows: When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. at 484. The COA cannot issue unless both these requirements are met. The standard is a modest one, however, *Lambright v. Stewart*, 220 F.3d 1022, 1027 (9th Cir. 2000), and can be satisfied merely by a showing that even if the law in this Circuit is clear, other circuits disagree. *Id.* at 1027–28 (citations omitted).

Petitioner's commitment offense, committed on February 11, 1981, was first degree murder with the use of firearm, robbery, and unlawful taking of a vehicle. He was convicted and sentenced to life without the possibility of parole, and he began serving his sentence on February 25, 1982. At the time he was convicted, section 2817 of the California Code of Regulations, title 15, provided that certain prisoners serving life without the possibility of parole would receive a commutation review hearing twelve years after entering prison, and every three years thereafter. This was later repealed, and he argues this amounted to an *ex post facto* law.

The Court turns first to the procedural ruling, which rested on AEDPA's one-year limitations period. Petitioner points out the Seventh Circuit's holding in *Cox v. McBride*, 279 F.3d 492, 493–94 (7th Cir. 2002). While every other circuit that has considered the issue of whether AEDPA applies to administrative decisions — including the Ninth Circuit, in *Shelby v. Bartlett*, 391 F.3d 1061, 1066 (9th Cir. 2004) — the Seventh holds it does not. *See Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000) (holding that AEDPA's certificate of appealability requirements were inapplicable to petitions collaterally attacking administrative action); *see also Sherrod v. Nebraska*, 2008 WL 2705490 at 3 (D.Neb. July 9, 2008) (surveying cases). The Seventh Circuit recognizes its holding stands alone, but has not retreated from it. *See Evans v. Circuit Court of Cook County, Ill.*, 569 F.3d 665, 666–67 (7th Cir. 2009); *Moffat v. Broyles*, 288 F.3d 978, 979–80 (7th Cir. 2002). Although this Court must follow *Shelby*, the Ninth Circuit, sitting *en banc*, could reconsider it. Because of this split, jurists of reason would find this issue debatable. *Lambright*, 220 F.3d at 1025–26 (holding that even if Ninth Circuit precedent compels a district court's ruling, the issue should be considered debatable where another circuit has disagreed).

/ / /

If the Ninth Circuit's precedent stands and AEDPA's one-year limitations period applies to this action, Petitioner will have no arguable basis for his appeal. His Petition is untimely for reasons set forth in the order denying it. But because it is debatable whether AEDPA's limitations period applies here, the Court must reach the merits to determine whether reasonable jurists could find Petitioner's claim at least debatable.

In contrast to an interest in a grant of parole, inmates can have no protectible interests in commutations or pardons. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464–65 (1981). An inmate's expectation that he will be commuted is "simply a unilateral hope." *Id*. at 465. Other circuits' rulings, examining different state laws, agree that new procedural rules governing commutation procedures do not constitute *ex post facto* laws. *See, e.g.*, *Snodgrass v. Robinson*, 512 F.3d 999, 1002–03 (8th Cir. 2008); *Nero v. Blanco*, 259 Fed.Appx. 648, 648 (5th Cir. 2007). *But see Robinson v. Blanco*, 307 Fed.Appx. 807, 807 (5th Cir. 2009) (holding that habeas petition stated a claim, where new laws made commutation unavailable for five years in spite of favorable recommendation).

The Fifth Circuit in *Robinson* equated Supreme Court precedent governing parole standards with precedent governing commutation. *See* 307 Fed.Appx. at 807 (citing *Garner v. Jones,* 529 U.S. 244, 255 (2000); *California Dept. of Corr. v. Morales*, 514 U.S. 499 (1995)). In that case, however, the petitioner had been recommended for commutation of sentence and only a new law establishing a mandatory waiting period stood in his way of being considered by the governor. *Robinson*, like the other cases, examined the effect of the state law alleged to be *ex post facto*, and the factual allegations in the petition.

Not all laws with some conceivable effect on the length of a sentence are *ex post facto* laws. *Morales*, 514 U.S. at 508. Here, Petitioner has merely alleged that he has not had a commutation review. There is no particular *ex post facto* concern arising from the unavailability of a hearing unless doing so would increase a prisoner's term of confinement. *Id.* at 509 n.4 ("If a delay in parole hearings raises *ex post facto* concerns, it is because that delay effectively increases a prisoner's term of confinement, and not because the hearing itself has independent constitutional significance.") Here, § 2817's requirement that

commutation reviews take place twelve years into incarceration, and every three years thereafter, was replaced with a provision permitting the Board of Prison terms to recommend inmates for commutation "from time to time." *See Allen v. Davis*, 2007 WL 1971946 (giving legislative history) (citing Cal. Penal Code § 4801(a)). As before, the final decision belongs to the Governor. Cal. Penal Code § 4800.

Unlike the petitioner in *Robinson*, Petitioner here has shown nothing but a conceivable effect on the length of his sentence. Even if he were entitled to regular periodic review instead of *ad hoc review*, commutation in his case is something he hopes for but cannot compel. And unlike the petitioner in *Robinson*, whose commutation had already been recommended but was held up by the new rule, Petitioner can show no particular likelihood the procedural change at issue here would affect the length of his sentence.

The only relevant opinion in this Circuit that provides any support for Petitioner's argument is *Karstetter v. Tucker*, 981 F.2d 1258 (9th Cir. 1992) (Table), an unpublished pre-*Morales* decision.[1] There, the panel considered a habeas petitioner's argument that an Arizona statute that increased the permissible interval between commutation applications and limited the availability of commutation hearings. The court cited *Watson v. Estelle*, 859 F.2d 105, 109–10 (9th Cir. 1998), *vacated on other grounds*, 886 F.2d 1093 (9th Cir. 1989), which addressed parole hearings, and equated commutation hearings with parole rights. The order merely asks the question, however; it does not answer it. Other courts showed some willingness to apply *Watson*'s reasoning to commutation review and hearings. *See Alston v. Robinson*, 791 F. Supp. 569, 590 (D.Md. 1992), but apparently none after 1992. This line of cases therefore does not take into account *Morales*' distinction between commutation and parole, although as noted in the discussion of *Robinson*, *supra*, the distinction is not observed in all cases.

Ordinarily, Petitioner would be required to plead specific facts showing the new law changing the process for obtaining a commutation "created a significant risk of increasing

---

[1] The Court cites this unpublished decision for purposes of showing whether the matters at issue here were ever considered debatable. *See* 9th Circuit Rule 36-3(c)(ii).

his punishment," *Mason v. Blanco*, 269 Fed.Appx. 521, 522 (5th Cir. 2008) (citing *Garner v. Jones*, 529 U.S. 244, 255 (2000), but here he has had no opportunity to do so. The remedy, therefore, would be to permit Petitioner additional discovery, *Garner*, 529 U.S. 257, but only if he could show the Petition was timely; if it is untimely, there is no reason to do so.

In view of these precedents, the Court believes it is improbable Petitioner would succeed on his *ex post facto* claim even if the Ninth Circuit were to reach the merits. Nevertheless, the issue does not appear to be clearly settled. The Court has been unable to locate any decisions examining whether the repeal of California's § 2817 presents an *ex post facto* problem. The only relevant order appears to be a report and recommendation, whose conclusions that the retroactive application of the repeal of § 2817 did not violate the prohibition on *ex post facto* laws are not supported by citation to any direct authority. *See Ross v. Schwarzenegger*, 2008 WL 4937599 at 2–3 (E.D.Cal. Nov. 17, 2008).[2] At least one other circuit recently presented with a similar question has expressed doubts about the petition's success but avoided reaching the issue. *See Farnham v. Wyoming Dept. of Corr.*, 2009 WL 2096298 at n.3 (10th Cir. July 17, 2009) (declining to reach *ex post facto* question, in spite of "serious doubts as to the viability of [the petitioner's] ex post facto challenges" to changes in commutation procedures).

The Court therefore concludes this question is unsettled, and holds the "modest standard" for issuance of a COA is met. The COA is therefore **GRANTED**.

**IT IS SO ORDERED**.

DATED: September 21, 2009

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[2] The petitioner filed objections to that report and recommendation, but it has yet to be accepted, rejected, or modified as provided under 28 U.S.C. § 636(b)(1)(C).